### A. E. DAVIS AND S. G. BROOKER v. STATE OF OHIO.

**1. INDICTMENT FOR FRAUDULENT CLAIMS TO PUBLIC OFFICERS.**

An indictment, charging defendants with making a fraudulent account against the city of Cleveland, with certifying to a fraudulent bill, with presentation of a fraudulent bill, with unlawfully making out and presenting a fraudulent bill and with receiving payment upon a false and fraudulent bill, sufficiently describes an offense under sec. 7075, Rev. Stat., making it an offense to make and present fraudulent claims to public officers. The averment that the defendants falsely pretended that the city of Cleveland was indebted to them or averments indicating in what respect the claim was false and fraudulent, are not essential where it is distinctly charged that it *was* false and fraudulent.

**2. EVIDENCE WHERE CONSPIRACY IS CHARGED.**

In a prosecution for making out and presenting false claims to public officers, where it is claimed that defendants, city employees, conspired with a member of a firm to defraud the city, the books of such firm are admissible, as part of the transaction, although other members of the firm were in no way connected therewith. Such evidence, however, is competent to be considered only in the event the jury find that the parties, including the member of the firm did so conspire.

Davis and Brooker v. State.

**3. EVIDENCE—TRANSACTIONS NOT INCLUDED IN INDICTMENT.**

In a prosecution under sec. 7075, Rev. Stat., for making out and presenting false claims to public officers, evidence of transactions other than the one upon which the indictment is based may be given for the purpose of proving that the defendants on trial, with others named in the indictment, were acting in concert or conspiracy, and also for the purpose of proving the defendants' guilty knowledge as to the claim upon which the indictment was based.

**4. IMPROPER STATEMENTS MADE BY THE PROSECUTING ATTORNEY.**

The general rule is, that to lay the foundation for a review by an appellate court, the attention of the trial court should be challenged by an objection and exception at the time. Under this rule improper statements in argument by a prosecuting attorney, unless they were so flagrantly unjust and improper as to deprive the defendants of a fair trial, will not be considered by the reviewing court in the absence of objection and exception.

**5. IMPROPER STATEMENT CURED BY INSTRUCTION.**

Improper statements by the prosecuting attorney in his argument to the jury that defendants were " in with " another person, naming him, " who is also under the indictment in this court," when such fact does not appear in the evidence, the jury having been directed to pay no attention to said statement, does not constitute prejudicial error unless it appears that the jury did not follow the instruction of the court.

**6. CHARGE ON QUESTION OF REASONABLE DOUBT.**

A failure to charge, upon request, that if any one of the juror's entertain a reasonable doubt of the defendants' guilt, it is the duty of such juror not to vote for a verdict of guilty, although correctly stating each juror's duty, cannot be regarded as prejudicial to the defendants, where the court charged generally that the evidence must satisfy the jury of the guilt of the defendants beyond a reasonable doubt before a conviction could be had.

ERROR to the Court of Common Pleas of Cuyahoga county.

HALE, J.

It is claimed that there are many errors apparent upon the record of this case, for which the judgment of the court of common pleas should be reversed.

First. It is claimed that the indictment is defective in that it states no offence under the statutes of the state of Ohio.

The indictment is founded upon sec. 7075, Rev. Stat., and not under sec. 7076, making it an offense to obtain property by false pretences.

The objection, therefore, that the indictment does not sufficiently describe an offense under the latter section, need not be further noted.

Section 7075, Rev. Stat., reads: " Whoever, knowing the same to be false or fraudulent, makes out or presents for payment, or certifies as correct to the general assembly, or either house thereof, or any committee thereof, or to the auditor of state, other state officers, or board of officers, or to the auditor or commissioners, or other officers, of any county, or to the auditor or other accounting officer of any municipal corporation, or to any township trustees, or other township officer, any claim, bill, note, bond, account, pay-roll, or other evidence of indebtedness, false or fraudulent, in whole or in part, for the purpose of procuring the allowance of the same, or an order for the payment thereof out of the treasury of said state, county, township, or municipal corporation, and whoever, knowing the same to be false and fraudulent, receives payment of any such claim, account, bill, note, bond, pay-roll, voucher, or other evidence of indebtedness, from the treasurer of the state, or of any county, township, or municipal corporation, shall, if such evidence of indebtedness so made out and presented, or certified, or of which

payment is received, is false or fraudulent to the amount of thirty-five dollars, or more, be imprisoned in the penitentiary not more than ten years nor less than one year, or, if false or fraudulent to an amount less than that sum, be fined not more than two hundred dollars or imprisoned not more than thirty days or both."

The indictment contains five counts.

The first count charges the defendants with making a fraudulent account against the city of Cleveland.

The second count charges the defendants with certifying to a fraudulent bill.

The third count charges the defendants with the presentation of a fraudulent bill.

The fourth count charges the defendants with unlawfully making out and presenting for payment a fraudulent bill.

The fifth count charges the defendants with receiving payment upon a false and fraudulent bill.

While statements of the indictment might have been more definite, yet it omits no substantial averment essential to a correct description of the crime under this section of the statute.

The averment that the defendants falsely pretending that the city of Cleveland, a municipal corporation duly organized as such under the laws of the state of Ohio, was indebted to them, is not essential to the charge made, and does not render the indictment, for that reason, bad. Independent of this averment, the crime is fully described and stated.

It is distinctly charged that the bill was false and fraudulent; and we deem it unnecessary to state in the indictment in what respect it was false and fraudulents.

Second—It is claimed that the court erred in admitting in evidence items from the books of the Ohio Heating & Manufacturing Company, over the objections of the defendant.

In support of the charge made in the indictment, the state offered evidence tending to establish, with others, the following facts: That Stewart, one of the defendants named in the indictment, was a member of the firm of the Ohio Heating & Manufacturing Company, a partnership. Brooker was a clerk in the city auditor's office. And Davis was an employee in the department of public works of the city. Stewart's firm in August, 1898, sold to the city, merchandise at and for the price of $49.11. About the time this sale was made, and before an account had been rendered to the city, Stewart, Brooker and Davis entered into a conspiracy to obtain from the city, in payment of the property thus sold, $249.11 instead of the agreed price. After several interviews and some objections to going into the scheme, by Davis, it was finally agreed to make the effort. The account was made against the city raising the bill from $49.11 to $249.11. which was presented to the proper officials of the city, allowed and paid. The sum of $49.11 was paid to this firm of which Stewart was a member, and the remainder, $200, was divided between Davis, Brooker and Stewart.

To show, we suppose, the *real* transaction between the city and the Ohio Heating and Manufacturing Company, the books of the firm were produced, and, in connection with the testimony of the bookkeeper and statements made by Stewart, items taken from the books of Stewart's firm were given in evidence, as also certain statements of Stewart made, in the absence of the other defendants.

Davis and Brooker v. State.

Upon the effect to be given to *this* testimony, the trial court said to the jury : "During the progress of the trial the court allowed evidence to be offered relating to the books, and several items from these books, at least one or more were offered in evidence upon the theory that the state had offered some evidence tending to show a conspiracy between these. parties to defraud as charged in this indictment. If, upon this trial, the evidence does not sustain the claims of a conspiracy between these parties, then the business accounts kept by Stewart in connection with his partner, a person in no way connected with these transactions, are not competent to be considered. They are competent only to be considered in the event the jury find that these parties did conspire, and that in connection with the conspiracy and as a part of that transaction, these entries were made, that is the entries made that in some way relate to the transaction, and are in the nature of evidence of the transaction itself in some shape or in some form. It was only upon that theory that these books were admitted in evidence. They were not books that were under the supervision, control or made under the observation of the defendants on trial, and therefore they were permitted only and are competent only when it shall appear that they were acting in conspiracy with Stewart, to do the things complained of in this indictment. And, of course, if the conspiracy is not established by the evidence, then the accounts of Stewart would not be competent for consideration as against the defendants."

The court also gave in the charge to the jury certain requests made by counsel for the defendants, upon this same subject, which, perhaps, more pointedly called to the attention of the jury the conditions upon which this testimony was to be considered and the purposes for which it was to be used.

The circumstances under which this testimony was to be considered by the jury, and the use to be made of it, if it is considered at all, we think, was correctly stated by the court and, for the purposes permitted, was competent.

The court also permitted evidence to be offered over the objection of the defendants, of other transactions than the one described in this indictment. Referring to this testimony the court, in charging the jury, says : "I stated to the jury at the time the reasons why that testimony was admitted, and the purposes for which it was offered and to what extent it was to be used as evidence in this case, and to be considered by the jury. But I want to repeat briefly on that subject in connection with final instructions—these defendants are on trial only upon the transaction described in this indictment. They are not upon trial upon any other charge. You are here to investigate and determine the guilt or innocence of the defendants, in respect to the charge here made. Evidence of other transactions was admitted as you recall for two purposes · first, the court allowed evidence of other transactions to be offered as it might tend to prove that the defendants on trial, with others named in the indictment, were acting in concert or in conspiracy; evidence tending to show the common design and purpose on their. part to the thing complained of in this indictment. It was offered for one other purpose, that is the evidence of other transactions, namely, as it might tend to prove knowledge on their part that the particular bill set out in this indictment was a false and fraudulent bill. And so, in conformity with the holdings of the courts in this state, where guilty knowledge is in-'volved, where it is important to show guilty knowledge, courts have said

as I have said here in this case, that evidence of other transactions may be offered as bearing upon that question, and that only. That is, it is for the purpose of proving, if it tends in that direction, that the particular bill and claim here alleged was false and fraudulent, was not a mistake, was not a mere error, but that it was made out, that it was presented, that it was certified as correct, that payment was obtained upon it with the knowledge that it was at the time a false and a fraudulent bill."

In the admission of this testimony for the purposes for which it was admitted we think there was no error.

Third—A reversal is asked on the ground of misconduct of the prosecuting attorney in his closing argument to the jury as follows :

First—" When Dan says he didn't know what his fate is to be in this case, he tells you the truth. What reason does he give when Dawley asks him " How does it come you are on the stand testifying against these fellows ?" He says, ' They got me before the committee in the city hall, and they put me upon a chair and fired questions at me, and before I knew it they had me. What's the use of my trying to get out of this thing? I told the city hall committee last summer.' 'As a matter of fact they went out to his shop with a subpoena, put him on a car and put him in the city hall without a chance to consult a lawyer, and put questions to him one after another till Dan says ' I'm gone,' and he told it all. Having told the one story before that committee in the city hall at a time when he had no opportunity to consult a lawyer, when he didn't know what his legal rights were, do you expect he would go on that stand and tell another story ? Do you see the absurdity of your position when you try to make this jury believe that Dan Stewart has a deal with me? The story that he tells here is the story that he told at the city hall away last summer. Remember, Dan was taken away from his work and put in a chair without a chance to consult a lawyer, without knowing what his legal rights were, and he could not do anything else, and he finally admitted. The testimony which he gave up there before that committee was the testimony and the foundation for the testimony which he gave in this court. So much for the reason why Dan is here. Not because he has a deal with me and not because I have made a dicker with him."

Second—" They were in with Tom Tearl, who is already under indictment in this court for a similar offense."

Third—" I could show you hundreds of other bills that were done just like this."

As to the first and third of these statements, no objection was made by counsel for defendants at the time and no exception taken.

As to the second statement, counsel for defendants objected at the time and asked the court to instruct the jury to disregard the same, and the court then said to the jury : " I think there is no testimony here that Tearl is under indictment and the jury will pay no attention to it and wholly disregard it."

There is nothing to indicate that the jury did not follow this instruction of the court.

As to the other two statements, no notice was taken at the time of the remark, either by counsel or the court.

Upon this subject we believe the general rule to be, that to lay the foundation for a review by an appellate court the attention of the trial court should be challenged by an objection and exception taken at the time.

·Cases, however, may arise in which comments of the prosecuting attorney are so flagrantly unjust and improper as to require a verdict obtained by ·such statements, to be set aside on a motion for a new trial, for the reason that the accused has been deprived of a fair trial, even if no ·objection was made at the time. If for any reason the accused has not been awarded a fair and impartial trial, a verdict of guilty should be set aside and a new trial ordered, and failure of the trial court in this regard ·is subject to review.

This record, however, presents no such case. While some of the remarks of the prosecuting attorney were improper and upon facts not appearing in the evidence, and without excuse, we are of the opinion that they were not of such a character as to require a reviewing court to set aside the conviction in the absence of an objection and exception taken at the time.

Fourth—It is claimed that the court erred in refusing to give in ·charge to the jury the third request which reads as follows :

"If after consideration of the whole case, any one of the jury should entertain a reasonable doubt of the guilt of the defendants or ·either of them, it is the duty of such juror not to vote for a verdict of guilty."

In the charge to the jury the court, upon this subject, said :

"It is also a rule or a principle of law that before a person can be rightly or lawfully convicted, the evidence must establish his guilt beyond a reasonable doubt, and so you are instructed in this case that before a conviction can be rightfully returned against these defendants upon this indictment or upon any count of it, the evidence offered in support of each charge must satisfy the jury beyond a reasonable doubt before a conviction can be had. And if not so established by such weight of evidence as that, then the defendants would be entitled to a ·verdict. They would be entitled to a verdict of not guilty."

This request, undoubtedly stated correctly the duty of each juror. Whether the defendants in a given case however, were or were not prejudiced by the refusal of the court to give such request or a request of ·this import, must be determined in view of the whole charge as given. Under the charge here given, it is inconceivable that any juror should mis-·conceive his duty in this respect. It would seem that every man upon the jury knew at the close of that charge, that a verdict of guilty could· not be rendered without a concurrence of each and every juror, and that the charge could have no other meaning than such conviction could only follow when each juror had been convinced, beyond a reasonable doubt, ·of the guilt of the defendants.

In State v. Hamilton, 57 Iowa, 596, in the trial of a criminal case, ·the court was asked to charge in substance, that if any juror entertains a reasonable doubt of defendant's guilt, he was not required to surrender his conviction because the other jurors entertain no such doubt. And this instruction was refused, and the court, in commenting upon the reasons, said :

"Of course, each juror is to act upon his own judgment. He is not required to surrender his convictions unless convinced. He may be aided by his fellow-jurors in arriving at the truth, but he is not to find a ver-·dict against his judgment merely because the others entertain views different from his own. But a juror need not be advised of so simple a proposition. The usual method of instructing upon the measure of proof required in criminal cases is sufficient."

In State v. Robinson, 12 Wash., 491, we find substantially the same holding.

In State v. Young, 16 S. W. Rep., (Mo.) 408, in commenting upon the refusal of the court to give a similar charge, this language is used :

"We think it is an unnecessary reflection upon jurors to say that they are so ignorant that they do not understand that each juror must be convinced of defendant's guilt. So universally is this conceded that, in the whole range of criminal trials in this state, no one has ever before thought it necessary to embody the idea in an instruction ; and while no harm could possibly come from giving it, we do not think its refusal could possibly have prejudiced the defendant's case. The defendant would have polled the jury and ascertained exactly how each one stood on this question. The cause can not be reversed for this action of the court in refusing it."

Opposed to these two decisions we find only two cases : People v. Dole, (Supreme Court of California,) 55 Pac. Rep., 561; and McGuire v. State, 2 Ohio Circ. Dec., 318.

In People v. Dole, it does not definitely appear from the case, whether the court regarded the refusal to give such request as *reversible error*. The court does say that it states a correct proposition of law and should have been given.

The case of McGuire v. State, *supra*, seems to be in point.

The case, however, does not disclose the whole record and, believing that in this case the failure to give such request was in no way prejudicial to the rights of the defendants, we are of the opinion that the judgment should not for this reason be reversed.

Fifth—It is claimed that the verdict is against the evidence offered in the case, and for that reason the judgment should be reversed.

We do not overlook the fact that both defendants upon trial, in the most positive terms denied any participation upon their part in the commission of this crime. If, however, the jury believed the statement of Stewart, corroborated as it was by many facts and circumstances surrounding the transaction, the verdict was justifiable.

We do not feel justified in disturbing the verdict of the jury on this ground.

On a review of the whole record, we feel certain that during the progress of the trial the trial court, both in the rulings upon the admissibility and rejection of evidence and in the charge of the court, with great care guarded all the rights of the defendants. And we find nothing in this record to lead us to the conclusion that the defendants did not have a fair trial.

And the judgment of the court of common pleas is affirmed.

*J. P. Dawley*, counsel for plaintiff in error Davis.

*H. D. Davis*, counsel for plaintiff in error Brooker.

*Harvey Keeler*, prosecuting attorney, for defendant in error.